IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | Case No. BK19-41570-BSK |
| | ) | |
| WESLEY H. HITCHCOCK, | ) | Chapter 12 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**Order**

THIS MATTER comes before the Court on two motions. The first is a motion for relief filed by American Mortgage Company ("AMC") (Doc. #131). The second is Debtor's objection to AMC's three proofs of claim, and request for valuation and cramdown. (Doc. #140). Trial on both motions was held by video conference on August 6, 2020. Patrick M. Patino appeared for the Debtor, and Cindy R. Volkmer appeared for AMC.

For the reasons stated herein, AMC is granted relief as to all collateral that secures its claims. Debtor cannot cram down AMC's claim as a matter of law because Debtor does not own the real estate. Debtor has not been able, and does not appear to be able, to file a feasible Chapter 12 Plan. On or before August 27, 2020, Debtor shall show cause as to why his bankruptcy case should not be dismissed. Alternatively, Debtor may move to convert his case to a Chapter 7 case.

Debtor's indebtedness to AMC is secured, in part, by agricultural real estate located in Brown County and Cherry County, Nebraska. In the parties' pretrial statement, AMC asserts that its claims are over-secured by $1,844,433.69, while Debtor asserts that they are under-secured by approximately $1,700,000. AMC also contends that the automatic stay does not apply to the real estate collateral because it is not owned by the Debtor. Alternatively, AMC contends that cause exists to grant relief from the automatic stay.

*Facts*

Except as noted below, the parties stipulated to the following facts in their Joint Preliminary Pretrial Statement (Doc. #202).

1. Debtor and his wife Candace S. Hitchcock filed for Chapter 12 relief on September 17, 2019.

2. Debtor and Mrs. Hitchcock are presently involved in a dissolution of marriage action. The cases were deconsolidated, and Mrs. Hitchcock's case was converted to a Chapter 7 case. (Doc. #187; Doc. #190).

3. AMC filed three claims totaling $4,583,075.31, including Claim No. 32 in the amount of $1,335,761.08, Claim No. 33 in the amount of $1,341,637.59, and Claim No. 34 in the amount of $1,905,676.64.

4. The indebtedness owed to AMC is cross-collateralized by corn, cattle, machinery and equipment and real estate. The parties stipulated the value of the non-real estate collateral is $2,331,575.30. After deducting the non-real estate collateral, Debtor owes AMC $2,251,500.01 as of the petition date.

5. AMC has already been granted relief from stay as to the corn and cattle. (Doc. #81; Doc. #98l; Doc. #141; Doc. #169).

6. The real estate is subject to a first position lien held by Security First Bank. As of the petition date, Security First Bank was owed $4,259,066. Therefore, AMC is fully secured if the real estate is worth more than its debt plus Security First Bank's debt, which equals $6,510,566.01.

7. Debtor does not own the real estate collateral. It is owned by Hitchcock One, LLC ("Hitchcock One"), and Gordon and Shirley Hitchcock.

*Relief from Automatic Stay*

AMC seeks relief against machinery and equipment owned by the Debtor and against real estate owned by third parties Hitchcock One and Gordon and Shirley Hitchcock. The automatic stay prohibits certain actions against the Debtor. *See* 11 U.S.C. § 362(a). However, "[t]he automatic stay does not, in general, apply to actions against third parties." *Nat'l Bank of Ark. v. Panther Mountain Land Dev., LLC (In re Panther Mountain Land Dev., LLC)*, 686 F.3d 916, 921 (8th Cir. 2012). Although Debtor is a member of Hitchcock One, as a general matter the automatic stay does not apply "to actions against parties who enjoy factual or legal relationships with a debtor, such as a debtor's wholly owned subsidiaries." *Id.* at 923.

The automatic stay clearly applies to machinery and equipment collateral as it is owned by the Debtor. The automatic stay only applies to the real estate if it is property of the estate. The stay prohibits acts "to obtain property from the estate," "to exercise control over property of the estate," or to "enforce any lien against property of the estate." 11 U.S.C. § 362(a). The bankruptcy estate is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case," *see* 11 U.S.C. § 541(a)(1), and is to be "construed broadly as encompassing a debtor's many and varied property interests." *Panther Mountain Land Dev.,* 686 F.3d at 924.

In his brief, Debtor asserts a legal or equitable interest in the real estate because "his entire farming operation comprises the 700 acres that he has already planted with his 2020 crop of piddle (sic) beans", and "he physically occupies and leases the 700 acres." A leasehold coupled with a possessory interest would qualify as property of the estate. *See In re Hejco, Inc.*, 87 B.R. 80, 83 (Bankr. D. Neb. 1988).

The record does not include evidence that a leasehold or possessory interest exists or the terms of any lease. Debtor's schedules identify his ownership interest in Hitchcock One, which itself "owns farmground" (Doc. #20). Debtor's Schedule A provides the real estate is owned by third parties and that it is scheduled "for disclosure purposes only". While Debtor's Schedule G identifies unexpired leases between Hitchcock One and DJ Hladky, and between Hitchcock One and Kraig Freeman, it does not identify any leases between Debtor and Hitchcock One.

Even if Debtor leased the real estate at the time the bankruptcy was filed, the leases were not assumed and are deemed rejected as a matter of law. Unexpired leases of nonresidential real property are deemed rejected if not assumed by the earlier of "120 days after the date of the order for relief; or the date of the entry of an order confirming a plan." 11 U.S.C. § 365(d)(4). Upon rejection, the real estate must be surrendered to the lessors, in this case Hitchcock One and Gordon and Shirley Hitchcock. *Id.*

Debtor asserts that the automatic stay should be extended to Hitchcock One and Gordon and Shirley Hitchcock. The Eighth Circuit is generally reluctant to expand the scope of the automatic stay and has allowed extensions only where "unusual circumstances" exist. "The unusual circumstances in which the bankruptcy court can stay cases against non-debtors are rare". *Panther Mountain Land Dev.*, 686 F.3d at 921 (quoting *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 762 (8th Cir. 2011)). Such unusual circumstances do not appear to be present in this case. Debtor asserts he leased property owned by a third party, which is a common occurrence. Moreover, AMC has liens against the fee interest in the real estate, not against Debtor's leasehold interest. The real estate is subject to first position liens owned by Security First Bank. Security First Bank is free to foreclose its liens upon default.

Even if such unusual circumstances existed, Debtor was required, but did not ask the court to expand the automatic stay to third parties. To stay an action against a third party, a bankruptcy court must exercise its broad equitable powers under 11 U.S.C. § 105, requiring the court to weigh the normal considerations justifying injunctive relief. *Panther Mountain Land Dev.*, 686 F.3d at 926.

> [W]e believe that in a situation such as this, where the proposed action involves only third parties and no estate property, and where an "unusual-circumstances" "exception" would be needed to justify extension of the automatic stay, § 105 is the more appropriate source of authority for assessing the propriety of a stay. We also agree with the Bank that a stay issued pursuant to that section should be treated as an injunction.

*Id.* The Court of Appeals added that "[t]he procedures and standards applicable pursuant to § 105 . . . provide a more than adequate framework for assessing the propriety of stays in 'unusual' situations." *Id.* at 927.

*Valuation*

Debtor seeks to cram down AMC's lien against the real estate in accordance with 11 U.S.C. § 506(a)(1). That section provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value *of such creditor's interest in the estate's interest* in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1) (emphasis added).

Debtor and AMC presented evidence as to the value of the fee interest in the real estate. However, Debtor does not own the real estate. At best he may hold, or have held, a leasehold or possessory interest. There is no evidence as to the value of AMC's interest in Debtor's leasehold or possessory interest, which is the focus of § 506(a)(1).

The failure to present evidence of AMC's interest in the estate's interest in the real estate is of no consequence. A discharge of the Debtor does not affect AMC's lien in property owned by third parties as a matter of law. *See* 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."). As such, a discharge of Debtor will not extinguish AMC's lien against the real estate. It will only release the Debtor from personal liability. AMC's lien will survive the bankruptcy case regardless of the value of the real estate.

In any event, the evidence presented indicates that AMC's lien is fully secured as of the date of the bankruptcy petition. Debtor and AMC each presented expert testimony regarding value of the fee interest.

Debtor's expert, Donald Kracke, a licensed real estate broker and Accredited Land Consultant, performed a sales comparison approach. He opined that the combined value of all real estate (1042.70 acres in Brown County and 952.13 acres in Cherry County) equaled $4,885,222.64. This value results in AMC's claim being unsecured by $1,625,343.37. Kracke testified that agricultural land values decreased in both counties by 33% between January 2018 and September 2019, in significant part due to softening commodity prices. Kracke testified that he calculated the 33% decrease by plotting the price per irrigated acre for eight sales in Brown County, Nebraska, between January 2018 and August 2019.

The Court is not inclined to accept Kracke's valuation. Kracke did not explain his methodology or calculations to arrive at a 33% reduction in value. He did not explain how he used this percentage to arrive at his final per-acre values. He did not

indicate whether or how the 33% decrease impacted non-irrigated land. He did not indicate how or whether he adjusted his comparable sales to the subject property.

AMC's expert, Chad Tetherow, a licensed certified general appraiser, appraised the parcels and opined the total value equaled $7,490,000. At this valuation, AMC's claims are over-secured by $979,433.99.[1] Tetherow's appraisal is certified as conforming with the Uniform Standards of Professional Appraisal Practice. Although he agreed with Kracke that the agricultural economy was weaker in September 2019, he opined that higher quality land in other counties had only decreased between 3% and 15%, depending on the desirability of the land. He testified that the Brown County real estate was higher quality for Nebraska. The real estate in Cherry County was average for the area, but lower quality for Nebraska.

Debtor disputed the use of the comparable properties Tetherow selected and in using Brown County sales for neighboring Cherry County. However, Tetherow and Kracke both testified that there were almost no comparable sales in Cherry County during the applicable period. Tetherow testified that his use of the comparable properties was proper under the circumstances and that he properly adjusted them.

Debtor also disputed Tetherow's valuation of irrigated portions of Brown County real estate at $5,000 per acre. Kracke testified that the last time irrigated real estate sold in Brown County for such a price was in early 2018. However, Tetherow's valuation results in an over-secured claim of $979,433.99. AMC's claim would be over-secured at a per acre value significantly less than $5,000 when spread over the 754.3 irrigated acres in Brown County.

Debtor's objection to AMC's three proofs of claim, and request for valuation and cramdown, is overruled.

*Show Cause*

Debtor shall show cause on or before August 27, 2020 as to why his case should not be dismissed. Debtor has filed three Chapter 12 Plans and has been unable to confirm any of them. Debtor's current Chapter 12 Plan (Doc. #185) is not confirmable as it is predicated upon AMC's claims being crammed down as under-secured, which Debtor cannot do as a matter of law. The failure to file a confirmable plan is grounds for dismissal.

> The fact that the Plan is not confirmable under § 1225 is by itself grounds for dismissal. Also, "filing for Chapter 12 protection without the ability to reorganize renders the petition subject to dismissal. Cause for dismissal

---

[1] AMC asserts in the Joint Preliminary Pretrial Statement (Doc. #202) that the real estate is valued at $7,735,000 and it is over-secured by $1,844,433.69. This value most closely aligns with appraisals with an effective date of March 28, 2018, which is not the applicable date for valuation purposes.

exists where a Chapter 12 debtor has had ample opportunity to propose a confirmable plan but has failed to do so.

*In re Michels*, 301 B.R. 9, 18 (Bankr. N.D. Iowa 2003). Debtor's inability to propose a confirmable plan is further evidenced by Debtor's First Amended Chapter 12 Plan (Doc. #110), which projected a negative cash flow without cramming down AMC's claims. Debtor's Second Amended Chapter 12 Plan projects a positive cash flow, but in an amount significantly less than what is required to service the indebtedness owed to AMC.

IT IS THEREFORE ORDERED:

1. Debtor's Objection to Proof of Claims No. 32, 33, And 34, and request for valuation and cramdown (Doc. #140) is overruled;

2. Confirmation of Debtor's Second Amended Chapter 12 Plan (Doc. #185) is denied;

3. American Mortgage Company's Second Motion for Relief from the Automatic Stay (Doc. #131) is granted; and

4. Debtor shall have until August 27, 2020 to show cause as to why his case should not be dismissed. Alternatively, Debtor may file a motion to convert his case to a Chapter 7 case. If Debtor fails to do either, Debtor's case will be dismissed without further notice.

Dated: August 14, 2020

BY THE COURT:

/s/ Brian S. Kruse
United States Bankruptcy Judge

Notice given by the court to:

*Patrick M. Patino
*Cindy R. Volkmer
United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.